**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KIM K. WILLIAMS,
on behalf of herself and others similarly situated,

    Plaintiffs,

vs.

MBNA AMERICA BANK, NA,

    Defendant.

Case No. 06-13910

Honorable Gerald E. Rosen

Magistrate Judge Steven D. Pepe

---

Ian B. Lyngklip (P47173)
Adam G. Taub (P48703)
ilyngklip@pop.net
adamlaw@pop.net
**LYNGKLIP & TAUB**
Attorneys for Kim K. Williams
24500 Northwestern Highway, Suite 206
Southfield, MI 48075
(248) 746-3790

Joseph H. Hickey (P41664)
Laura C. Baucus (P56932)
Bryan J. Anderson (P62473)
jhickey@dykema.com
lbaucus@dykema.com
banderson@dykema.com
**DYKEMA GOSSETT PLLC**
Attorneys for Defendant
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304-5086
(248) 203-0555/(248) 203-0796

---

**REPLY BRIEF IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I. Introduction. ................................................................................................................ 1

II. Plaintiff Failed To Cite Any *Content* Cases And, Accordingly, Has Not Offered Any Authority To Defeat MBNA's Motion. ............................................................................ 2

    A. "Clear And Conspicuous" Is Not The Issue Here Because Under The ECOA, This Requirement Addresses The *Format* Of A Disclosure, Not The *Content*. ............. 2

    B. Plaintiff's Reliance On Case Authority Interpreting The TILA Is Unavailing. ..... 4

III. MBNA's Motion Is Properly Considered A Motion To Dismiss, And This Court Should Not Convert MBNA's Motion To One for Summary Judgment. ....................... 6

IV. Plaintiff's Exhibit B (Expert Report) Is Not Properly Before The Court And Should Be Stricken. ........................................................................................................................ 8

CONCLUSION ................................................................................................................. 8

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aikens v. N.W. Dodge*, No. 03 C 7596, 2006 WL 59408 (N.D. Ill. Jan. 5, 2006) .......................... 2

*Cowen v. Bank United of Texas*, FSB, 70 F.3d 937, 941 (7th Cir. 1995) ....................................... 5

*Fort v. First Citizens Bank & Trust Co.*, 526 F. Supp. 22, 26 (M.D. N.C. 1981) .......................... 6

*Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) ................................................ 4

*Herrera v. First Northern Savings & Loan Ass'n*, 805 F.2d 896, 899-900 (10th Cir. 1986) ......... 6

*Higgins v. J.C. Penney, Inc.*, 630 F. Supp. 722 (E.D. Mo. 1986) .................................................... 2

*Knapp v. Americredit Fin. Servs., Inc.*, 245 F. Supp. 2d 841, 849 (S.D. W. Va. 2003) ................. 6

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 n.2 (7th Cir. 2004) ............ 4

**Other Authorities**

15 U.S.C. § 1601 ............................................................................................................................. 1

15 U.S.C. § 1605(b) ........................................................................................................................ 7

15 U.S.C. § 1632(a) ........................................................................................................................ 6

15 U.S.C. § 1691(d) ........................................................................................................................ 1

WEBSTER'S THIRD NEW INT'L DICTIONARY (Philip Babcock Gove ed.,
  Merriam-Webster Inc. 2002) ...................................................................................................... 4

**Rules**

12 C.F.R. § 202, Supp. I. to Pt. 202 ................................................................................................ 3

12 C.F.R. § 202.4 ........................................................................................................................ 1, 2

12 C.F.R. § 202.4(d) ................................................................................................................... 3, 5

12 C.F.R. § 202.9 ..................................................................................................................... 1, 4, 5

12 C.F.R. § 202.9(b)(2) ................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 7, 8, 9

**I.      Introduction.**

Plaintiff failed to respond to the one legal issue raised in MBNA's Motion to Dismiss. Because Plaintiff's claim relates to the *content* of MBNA's adverse action notice,[1] MBNA argued that the *content* of its adverse action notice satisfied all *content* requirements imposed by the ECOA and the pertinent implementing regulation, 12 C.F.R. § 202.9.  Plaintiff's response does nothing to undermine, alter or change the conclusion that MBNA provided Plaintiff with the *specific* and *principal reasons* for the credit denial.  *See* MBNA Motion to Dismiss at p 7.

Apparently unable to find helpful authority opposing MBNA's arguments, Plaintiff instead resorts to arguing a strained interpretation of standards governing ECOA *formatting* requirements – 12 C.F.R. § 202.4 (governing type size and style) rather than the ECOA *content* requirements – despite the fact that Plaintiff's Complaint is devoid of *any* allegations relating to *format*.[2]  In doing so Plaintiff improperly asks this court to interpret 12 C.F.R. § 202.4 in the context of the requirements imposed by a completely different *and inapplicable* statute, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.

By relying on ECOA *formatting* requirements and case authority interpreting the TILA that are wholly inapplicable and irrelevant to this case, Plaintiff confuses the dispositive issue in an attempt to salvage a Complaint that simply fails to state a claim under the ECOA.  Plaintiff's Complaint must be dismissed.

---

[1] In her one count Complaint, Plaintiff alleges that MBNA's adverse action notice fails to meet Equal Credit Opportunity Act, 15 U.S.C. § 1691(d), ("ECOA") requirements because the *reasons* provided for MBNA's denial of Plaintiff's credit card application allegedly were "incoherent, illogical and did not constitute actual reasons."  Compl. at ¶ 14.

[2] Nor can she make such allegations – considering the prominence of the declination language in the subject adverse action notice (constituting the second sentence of a four sentence letter in 12 point Times New Roman font).  *See* MBNA Motion to Dismiss, Ex. 1.

1

**II.     Plaintiff Failed To Cite Any *Content* Cases And, Accordingly, Has Not Offered Any Authority To Defeat MBNA's Motion.**

MBNA cited case law specifically addressing the *content* requirements of adverse action notices under the ECOA and Regulation B, including cases where the plaintiffs raised the same argument alleged by Plaintiff here, *i.e.,* that the language in the notice was not understandable. In fact, in the cases cited by MBNA, such as *Aikens v. N.W. Dodge*, No. 03 C 7596, 2006 WL 59408 (N.D. Ill. Jan. 5, 2006) and *Higgins v. J.C. Penney, Inc.*, 630 F. Supp. 722 (E.D. Mo. 1986) (discussed in detail in MBNA's Motion to Dismiss, p. 12), the language used by such creditors was arguably even less detailed and complete than the language used by MBNA here, but nevertheless the courts uniformly held that the creditor had met its notice obligations under the ECOA and Regulation B because the creditor's only obligation (met in each case) was to provide the specific and principal reasons for the credit denial.

**A.     "Clear And Conspicuous" Is Not The Issue Here Because Under The ECOA, This Requirement Addresses The *Format* Of A Disclosure, Not The *Content*.**

Plaintiff criticizes MBNA for not "addressing the relevant standard for [adverse action] notices: 'clear and conspicuous.'" Pl. Resp. Br. at 2. MBNA did not address this standard (12 CFR 202.4) because the "clear and conspicuous" standard under the Regulation B relates to *formatting* requirements, which were not raised in Plaintiff's Complaint and are, therefore, inapplicable. Plaintiff's argument to the contrary is a red herring, revealing that Plaintiff has no legal basis upon which to oppose MBNA's motion.

Regulation B, by its own terms, contains two distinct standards for the *format* and *content* of mandated disclosures. The provision of Regulation B cited by Plaintiff providing that disclosures under the ECOA must be "clear and conspicuous," 12 C.F.R. § 202.4(d), pertains to the *format* of such disclosures, not the *content*:

2

> § 202.4 General rules. *** (d) ***Form*** of disclosures. A creditor that provides in writing any disclosures or information required by this regulation must provide the disclosures in a **clear and conspicuous** manner. . . .

*Id*. (italics in original; bold and underlining added). The Federal Reserve Board's Official Staff Interpretations to Regulation B illuminate this requirement:

> 1. *Clear and conspicuous*. This standard requires that disclosures be presented in a reasonably understandable **format in a way that does not obscure the required information. No minimum type size is mandated, but the disclosures must be legible, whether typewritten, handwritten, or printed by computer**.

12 C.F.R. § 202, Supp. I. to Pt. 202 (italics in original; bold and underlining added). Simply put, Plaintiff has confused *form/format* with *content*. The § 202.4(d) conspicuity requirement pertains, by its own terms, to the *format,* providing that such notices must be presented in "a reasonably understandable *format*" and does not purport to mandate *any* standard with respect to the *content* of an adverse action notice. To the extent there could be confusion (which there is not), the staff interpretation further clarifies that § 202.4(d), pertains only to *format* – by it references to the fact that information should not be obscured, type size, legibility, typewritten, handwritten, and computer written typeface – none of which have any thing to do with *content* (*i.e*., the specific and principal reasons for the declination of credit discussed in another section, § 202.9). Plaintiff's argument to the contrary invites this Court to engage in what could only be viewed as a strained interpretation of an otherwise clear statute/regulation.[3]

---

[3] In addition, it is worth noting that the Merriam-Webster's dictionary defines "format" as "1 a: the shape and size of a publication as determined by the number of times each constituent sheet has been folded; b: the general makeup or style of a publication; 2: general plan of physical organization or arrangement (as of a television show or the design of a coin); 3: size, shape, proportion." WEBSTER'S THIRD NEW INT'L DICTIONARY (Philip Babcock Gove ed., Merriam-Webster Inc. 2002). Given this definition, combined with the language and staff interpretation of § 202.4(d), it is clear that, contrary to Plaintiff's insistence, "clear and conspicuous" under the ECOA has absolutely nothing to do with the *content* of the reasons contained in the May 2, 2006 adverse action notice.

3

Significantly, there is no reported decision that expressly holds or even suggests that the § 202.4(d) "clear and conspicuous" standard under the ECOA imposes any requirements regarding the *content* of an adverse action notice. That is because, as explained in detail in MBNA's motion, the dispositive regulation governing Plaintiff's allegations is 12 C.F.R. § 202.9, which provides requirements concerning the *content* of ECOA disclosures. *See* 12 C.F.R. § 202.9(a)(2) (articulating the "***Content*** of notification when adverse action is taken" (emphasis added)); 12 C.F.R. § 202.9(b)(2) (addressing the "***Statement*** of specific reasons" required in adverse action notices). Plaintiff's argument that rules governing the *formatting* of adverse action notices apply here is disingenuous at best and must be rejected.

**B. Plaintiff's Reliance On Case Authority Interpreting The TILA Is Unavailing.**

Plaintiff's attempt to import any "clear and conspicuous" standards developed under the TILA to this case, where the subject case contains no TILA allegations and, more importantly, the Board of Governors of the Federal Reserve System has promulgated a regulation that directly and expressly addresses the *content* required in an ECOA adverse action notice (12 C.F.R. § 202.9), is puzzling and ultimately unavailing. First, quite obviously, the ECOA and TILA are not the same statute, and therefore case law analyzing TILA standards cannot simply be applied to ECOA requirements.

Moreover, it is well established that the adverse action notice requirement at issue in this lawsuit, as mandated by the ECOA, is not a particularly arduous requirement. *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 n.2 (7th Cir. 2004). Contrast that to case law holding that TILA requirements are "hyper-technical." *See e.g., Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (cited by Plaintiff in her response, stating "TILA does

4

not easily forgive 'technical' errors");[4] *Cowen v. Bank United of Texas*, FSB, 70 F.3d 937, 941 (7th Cir. 1995) (stating that "hypertechnicality reigns" in TILA cases).  In short, compliance under TILA and the ECOA is not reviewed under the same rigorous (or not so rigorous) standards, and therefore Plaintiff's attempt to insert case law analyzing TILA into the ECOA and Regulation B realm must be rejected.[5]  Indeed, the TILA cases cited by Plaintiff are distinguishable on this basis alone.

Finally, the TILA cases upon which Plaintiff relies to prop up her argument that conspicuity for purposes of the TILA (not the ECOA) is a question of fact (Pl. Br. at 5), are inapplicable because even those cases primarily address the *format* (not the *content*) of the

---

[4] Plaintiff relies on *Handy*, *supra*, for the notion that "the relevant inquiry is whether the disclosure in question is understandable to an ordinary consumer." Pl. Resp. Br. at 11. *Handy*, however, analyzed whether certain forms the plaintiff obtained notifying her of her right to rescind a loan satisfied the "clear and conspicuous" standard under TILA, not the ECOA. *Handy*, 464 F.3d at 763. As discussed above, the TILA "clear and conspicuous" case law and standard is inapplicable to this case because, under the ECOA, this standard relates solely to the format of a disclosure and not to its content.

[5] Indeed, by citing TILA case law, Plaintiff appears to be arguing that the phrase "clear and conspicuous" has the same meaning for all consumer credit protection statutes.  That assumption is incorrect, and this phrase has been interpreted to have different meanings in different statutes.  For instance, the Seventh Circuit has held that the use of the phrase "clear and conspicuous," as used by the Consumer Leasing Act, pertains only to the degree of visibility of the required disclosure's language, and not to the degree of comprehension.  *See e.g., Schmidt v. Nissan Motor Acceptance Corp.*, 104 F.Supp.2d 955 (N.D. Ill, 2000) (discussing *Channell v. Citicorp National Services Inc., 89 F.3d 379* (7th Cir. 996).  In stating the rule of the Seventh Circuit, the *Schmidt* Court held as follows: "[T]he instant case is brought under the Consumer Leasing Act, which does not require that lease disclosures be comprehensible to the average consumer.  As the court in *Channell v. Citicorp National Services Inc.*, 89 F.3d 379 (7th Cir. 1996), explained, "clear and conspicuous manner" within the context of § 1667(a) of the Consumer Leasing Act refers to the mode of presentation, **not the degree of comprehension**.  *Id*. at 382.  **So long as a disclosure is visible, it has satisfied the "clear and conspicuous manner" requirement of § 1667 of the Consumer Leasing Act, even if it is incomprehensible to the average consumer.**  *Id*. **Accordingly, plaintiffs' argument that allegations of confusion are enough to survive a Rule 12(b)(6) motion to dismiss fails**." *Schmidt, supra* at 957 (emphasis added).

Thus, it is clear that case law interpreting one consumer protection statute cannot simply be applied indiscriminately to all other consumer protection statutes, *even if* the same phrases are used.  Here, the ECOA defines its requirements (12 C.FR. § 202.9) and there is neither need nor cause to import TILA requirements and inapposite cases interpreting the TILA.

5

TILA-mandated disclosures. *See e.g., Knapp v. Americredit Fin. Servs., Inc.*, 245 F. Supp. 2d 841, 849 (S.D. W. Va. 2003) (involving TILA disclosures under 15 U.S.C. § 1632(a) regarding annual percentage rate and finance charge to be declared "more conspicuously than all other disclosures except the creditor's identity"); *Herrera v. First Northern Savings & Loan Ass'n*, 805 F.2d 896, 899-900 (10th Cir. 1986) (same; additional analysis regarding use of capital letters and type "size, style and boldness of type"); *Fort v. First Citizens Bank & Trust Co.*, 526 F. Supp. 22, 26 (M.D. N.C. 1981) (involving TILA disclosures under 15 U.S.C. § 1605(b) regarding disclosures for credit life insurance and analyzing the format of the disclosures, including capital letters and type size). By relying on cases interpreting the "clear and conspicuous" standard in the context of formatting under TILA, Plaintiff is not only arguing inapposite case holdings, but she is once again attempting to insert new requirements into the ECOA that simply do not exist. Plaintiff's reliance on these cases and standards must be rejected and her Complaint must be dismissed.

### III. MBNA's Motion Is Properly Considered A Motion To Dismiss, And This Court Should Not Convert MBNA's Motion To One for Summary Judgment.

Plaintiff claims that (i) MBNA relies on exhibits that "fall outside the four corners of the complaint," Pl. Resp. Br. at 5, and that (ii) the issues raised in MBNA's Motion to Dismiss may not be decided under Fed. R. Civ. 12(b)(6). *Id*. at 18. Plaintiff therefore requests that this Court convert MBNA's motion to one for summary judgment. *Id*. This request, however, is of no moment, because the issue before the Court may properly be decided under Fed. R. Civ. P. 12(b)(6).

First, MBNA attached two exhibits to its motion: (i) the adverse action notice sent to Plaintiff, and (ii) MBNA's internal self-authenticating business records reflecting Plaintiff's

6

telephone application for a credit card.[6]  Plaintiff's suggestion that the Court cannot consider these exhibits is meritless.  *See* Pl. Resp. Br. at 5.  Both MBNA exhibits that Plaintiff argues are "outside the four corners of the complaint" are properly considered under the Fed. R. Civ. P. 12(b)(6) standard because they are (i) referred to in the complaint and (ii) central to Plaintiff's claim.  *See Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) ("a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings [for purposes of a motion under Fed. R. Civ. P. 12(b)(6)] . . . when a document is referred to in the complaint and is central to the plaintiff's claim.").  Plaintiff referenced the May 2, 2006 adverse action letter (and indeed, quoted the credit denial reasons) and her application for a credit card with MBNA throughout the Complaint.  *See* Compl. at 7-10, 12-14, 17.  Accordingly, they are appropriate to consider as part of the instant motion and do not run afoul of Rule 12(b)(6)'s prohibition on considering matters outside the pleadings.

Second, the Court does not even need to consider or review MBNA's exhibits when analyzing the instant motion.  With respect to Exhibit A (the adverse action notice), the Complaint quotes the language at issue from that notice verbatim, and therefore, this Court need not even consider the actual copy of the letter attached to MBNA's motion in order to decide the legal issue at hand.  *See* Compl. at ¶ 17(c).  With respect to Exhibit B (records reflecting Plaintiff's application for a credit card), MBNA explicitly stated in its brief that it is including information from that exhibit "to provide the Court with relevant background information and context only" and that it "is not raising any issue of fact" from that exhibit.  *See* Def. Br. at 3, n.2.  Accordingly, any information from MBNA's Exhibit B is not necessary for this Court to

---

[6] MBNA also attached a third exhibit, which is an unpublished case cited in MBNA's Motion.

7

consider whether Plaintiff has stated a claim under the ECOA, and this Court could ignore the same should it determine the need to do so.[7]

### IV. Plaintiff's Exhibit B (Expert Report) Is Not Properly Before The Court And Should Be Stricken.

Plaintiff, on the other hand, has failed to satisfy the dictates of Fed. R. Civ. P. 12(b)(6) by submitting with her response a copy of Plaintiff's Expert Report. *See* Pl. Ex. B. Indeed, much of Plaintiff's argument in opposition to MBNA's motion is derived from the opinions of her expert, David Yerkes. *See* Pl. Resp. Br. at 12-15. Mr. Yerkes' report, however, is not a part of the pleadings and, accordingly, may not be considered in the Court's analysis of the instant motion. Accordingly, the Court should strike Plaintiff's Exhibit B from the record and all portions of Plaintiff's Response that address Mr. Yerkes' report and/or opinions (Pl. Resp. Br. at 12-15).[8]

### CONCLUSION

For the foregoing reasons, MBNA respectfully requests that the Court enter an order dismissing this case with prejudice and awarding MBNA other such relief as the Court deems appropriate.

---

[7] Although Plaintiff makes much of MBNA's provision of relevant background information to this Court, it is notable that Plaintiff admits in the Response that the "facts in this case are not complex or generally disputed." *See* Pl. Resp. Br. at 3. Thus, Plaintiff's request to convert MBNA's purely legal motion to a summary judgment motion is simply another red herring, suggesting that Plaintiff is attempting to unnecessarily delay a hearing on this legal issue and the resolution of this litigation.

[8] Although not relevant to a Rule 12 motion, because Plaintiff improperly attached Mr. Yerkes' expert report to her response, MBNA notes that it contests any consideration of Mr. Yerkes as an expert for this case. The only thing Mr. Yerkes does in his report is quote the dictionary. Surely counsel and the Court do not need an expert to read the dictionary to them.

8

DYKEMA GOSSETT PLLC

By: s/Joseph H. Hickey
 Joseph H. Hickey (P41664)
 Laura C. Baucus (P56932)
 Bryan J. Anderson (P62473)
 Attorneys for Defendant
 39577 Woodward Avenue, Suite 300
 Bloomfield Hills, MI 48304-5086
 (248) 203-0555/(248) 203-0796
 jhickey@dykema.com
 lbaucus@dykema.com
Date: June 5, 2007
 banderson@dykema.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

- Adam G. Taub
- Ian B. Lyngklip
- Laura C. Baucus
- Joseph H. Hickey

DYKEMA GOSSETT PLLC

By: s/ Joseph H. Hickey
 Joseph H. Hickey (P41664)
 Attorneys for Defendant
 39577 Woodward Avenue, Suite 300
 Bloomfield Hills, MI 48304-5086
 (248) 203-0555
Date: June 5, 2007
 jhickey@dykema.com

DET01\557977.3
ID\BJA

9