UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM K. WILLIAMS,

      Plaintiff,      No. 06-CV-13910-DT

vs.               Hon. Gerald E. Rosen

MBNA AMERICA BANK, N.A.,

      Defendant.
_____/

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on   February 27, 2008

PRESENT: Honorable Gerald E. Rosen
       United States District Judge

I. INTRODUCTION

Plaintiff Kim Williams filed her one-count Equal Credit Opportunity Act ("ECOA") complaint in this action alleging that Defendant MBNA America Bank's letter notifying her of its rejection of her credit card application did not comply with the ECOA's notice requirements. Defendant MBNA now moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relieve can be granted. Plaintiff has responded to MBNA's motion, to which response MBNA has replied.

1

Having reviewed and considered Plaintiff's Complaint, MBNA's motion, and the parties briefs on the issues presented, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

The relevant facts are not complex and are not disputed.[1]

Plaintiff Kim Williams applied for an MBNA American Express credit card via telephone on May 2, 2006. Plaintiff first spoke with a telemarketer who input identifying and credit information she provided and, by computer, interfaced with Experian Information Services to obtain Plaintiff's credit history.[2] Plaintiff's application was then transferred by the MBNA computer system to a human MBNA credit analyst who personally spoke with Plaintiff.

From Plaintiff and Experian, MBNA was provided with the following

---

[1] *See* Plaintiff's Response Brief, p. 3, conceding that the facts are not disputed.

[2] Defendant attached to its Motion to Dismiss a sealed exhibit (Exhibit 2) which is the print out of the information provided by Plaintiff telephonically that was input into MBNA's system and the information obtained through the computer interface with Experian, which MBNA states it is presenting to the Court as "relevant background information and context only." Although matters outside the pleadings, if considered by the Court, would normally require converting Defendant's Motion to Dismiss to one for summary judgment under Fed. R. Civ. P. 56, the Court need not consider this Exhibit in deciding the issues presented in Defendant's Motion. Therefore, the motion will not be "converted" and will be decided pursuant to Rule 12(b)(6), not Rule 56.

2

information: (i) Plaintiff had a total revolving credit from a variety of sources in the amount of $26,596; (ii) of this amount, she had balances due on such revolving credit in the amount of $13,285; and (iii) although Plaintiff's household had a gross income of $70,000, Plaintiff herself had no income of her own (she was a student). Thus, as of May 2, 2006, Plaintiff had a total amount of unused credit available to her in the amount of $13,311.

MBNA's credit analyst denied Plaintiff's application and informed Plaintiff of the denial during the May 2, 2006 telephone conversation with her. The credit analyst then assigned two "reason codes" (codes which specified the principal reasons credit was being denied) -- 1010 and 1020 -- to Plaintiff's application, and input them into the MBNA system. The reason codes were assigned respectively to the following two reasons (i) "You have sufficient balances on your revolving credit lines;" and (ii) "You have sufficient credit available considering your income." The credit analyst explained these reason codes to Plaintiff during the May 2, 2006 telephone conversation, as well.

The MBNA system then automatically incorporated the text corresponding to the reason codes into a form letter to be sent to Plaintiff denying her application for credit and specifying that these were the principal reasons her credit application was being denied. The letter was dated May 2, 2006 and was mailed to Plaintiff the same day or shortly thereafter. Plaintiff does not deny receiving this letter. In fact, the letter is at the heart of Plaintiff's Complaint.

The first page of the May 2, 2006 letter stated as follows:

After careful review, we are unable to approve your request because **you have sufficient balances on your revolving credit lines** and **you have sufficient credit available considering your income.** Our credit decision was based in whole or in part on information obtained in a report from Experian, National Consumer Assistance Center, P.O. Box 2002, Allen, TX 75013-0036, 1-888-297-2472, www.experian.com/reportaccess.

If you have any information that may enable us to reconsider this decision, please write to MBNA, P.O. Box 15023, Wilmington, DE 19850-5023.

Sincerely,

Don Hamilton
Credit department

Please see the next page of this letter for important information.

*See* Defendant's Ex. 1 (emphasis added).[3]

The second page of the letter contained various notices and, in relevant part, informed Plaintiff that she had a right to a free copy of her credit report from Experian if she requested it within sixty days from receipt of the letter, and if she discovered any inaccurate or incomplete information in her credit report, she could dispute the matter with Experian.

Plaintiff does not dispute that as of May 2, 2006, she was a student, nor does she

---

[3] Although Plaintiff did not attach the letter to her Complaint, it is referred to and quoted *verbatim* in the text of the Complaint *See, e.g.*, Complaint, ¶ 17c. Thus, it is appropriate to consider this letter as part of the pleadings in connection with MBNA's Motion to Dismiss. The Sixth Circuit has held that "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

dispute that she had a total revolving line of credit from a variety of sources in the amount of $26,596, or that she had balances due on such revolving credit in the amount of $13,285, leaving her $13, 311 in available credit. Rather, her dispute with MBNA arises out of the language used by MBNA in its letter. She contends that the reasons provided by MBNA indicating that her American Express credit card application was being denied because she had "sufficient balance on [her] revolving credit lines and [because she had] sufficient credit available considering [her] income" were "incoherent [and] illogical," and, this, she contends, constitutes a violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d). *See* Complaint ¶ 14, 26.

### III. DISCUSSION

A.  STANDARDS APPLICABLE TO MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a district court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." The court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006). While this standard is a liberal one, it does require more than bare assertions of legal conclusions. *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007). To survive a motion to dismiss, the complaint "does not need detailed factual allegations, [however, mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007)

5

(citations omitted). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic*, 127 S.Ct. at 1965 (citations omitted). Courts do not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Id.* at 1974.

B.  THE ECOA ADVERSE ACTION NOTICE REQUIREMENTS

The ECOA was originally enacted in 1974 to prohibit discrimination in credit transactions. *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir. 2004). The Act's principal purpose is "to eradicate discrimination against women, especially married women whom creditors traditionally refused to consider for individual credit." *Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 771 (6th Cir.2005) (citation and internal punctuation omitted). The statute was amended in 1976 to require creditors to furnish written notice of the specific reasons why an adverse action was taken against a consumer. *See Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143 (5th Cir. 1983); 15 U.S.C. § 1691(d)(2), (3). As explained in the Senate report accompanying the 1976 amendments to the ECOA, Congress viewed the notice requirement as:

> a strong and necessary adjunct to the antidiscrimination purpose of the

> legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices.  <u>Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit.  Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation.  In those cases where the creditor may have acted on misinformation or inadequate information, th statement of reasons gives the applicant a chance to rectify the mistake.</u>

*Fischl, supra*, 708 F.2d at 146 (quoting S.Rep. No. 94-589, 94th Cong., 2d sess., 1976 U.S. Code Cong. & Admin. News, pp. 408, 406).

ECOA'S notice provisions apply to all loan applicants, not only those who claim to have been denied credit due to discrimination.  *See Jocchum v. Pico Credit Corp. of Westbank*, 739 F.2d 1041, 1043 n. 3 (5th Cir. 1984) (finding that the plaintiffs did not need to state a claim of discrimination to assert a cognizable claim under § 1691(d)); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 532 n. 22 (E.D.N.Y. 2006) ("The [ECOA] notification requirement extends to all applicants, and does not require specific allegations of discrimination."); *Costa v. Mauro Chevrolet, Inc.,* 390 F. Supp. 2d 720, 728 (N.D. Ill. 2005) ("Without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA."); *Polis v. American Liberty Financial, Inc.*, 232 F. Supp. 2d 681, 688 (S.D. W.Va. 2002); *Stoyanovich v. Fine Art Capital LLC*, 2007 WL 2363656 (S.D.N.Y., Aug. 17, 2007).

A credit denial is referred to as an "adverse action" under the ECOA.  15 U.S.C. §

7

1691(d)(6).  A written letter informing an applicant that credit has been denied is referred to as an "adverse action notice."  With regard to the content of adverse action notices, Section 1691(d) of the ECOA provides as follows:

> (1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
>
> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor.  A creditor satisfies this obligation by --
>
>> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>>
>> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained.  Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.
>
> (3) A statement of reasons meets the requirements of this section if it contains the specific reasons for the adverse action taken.

15 U.S.C. § 1691(d).

The regulations which implement the ECOA, "Regulation B," 12 C.F.R. § 202.1 *et seq.*, provide only as follows with regard to the content of adverse action notices:

> **[(a)](2) Content of notification when adverse action is taken**.  A notification given to an applicant when adverse action is taken shall be in writing and shall contain a statement of the action taken; the name and

8

address of the creditor; a statement of the provisions of § 701(a) of the Act; the name and address of the federal agency that administers compliance with respect to the creditor; and . . .

(i) A statement of specific reasons for the action taken.

12 C.F.R. § 202.9(a)(2)(i).

Paragraph (b) of the regulation further provides with regard to the statement of reasons:

> **Statement of specific reasons.** The statement of reasons for adverse action required by paragraph (a)(2)(i) of this section must be *specific* and indicate the *principal reasons* for the adverse action. Statements based on the creditor's internal standards or policies or that the applicant, joint applicant, or similar party failed to achieve a qualifying score on the creditor's credit scoring system are insufficient.

12 C.F.R. § 202.9(b)(2) (emphasis added).

While an Appendix to Regulation B sets forth some sample forms intended for use in notifying an applicant that adverse action has been taken on a credit application, the regulations make clear that "[t]he sample forms are illustrative and may not be appropriate for all creditors. They were designed to include some of the factors that creditors most commonly consider." 12 C.F.R. § 202, App. C, ¶ 2.

The Official Federal Reserve Board interpretations of Regulation B, 12 C.F.R. § 202 Supp. I, further make clear that there is no statutory or regulatory prohibition against a creditor's wording of its reasons. With regard to Section 202.9's notification requirements, the Official Staff Interpretation states,

> In notifying an applicant of adverse action as defined by § 202.2(c)(1), a

9

creditor may use any words or phrases that describe the action taken on the application.

12 C.F.R. 202 Supp. I.

The Official Staff Interpretation further states that "[a] creditor need not describe how or why a factor adversely affected an applicant." *Id.*

In this case, MBNA's notice to Plaintiff provided her with two principal reasons that her credit application was denied. The first principal reason given was "you have sufficient balances on your revolving line of credit." The statement is a "specific reason for the action taken." Furthermore, as Defendant notes, and Plaintiff does not dispute, the statement is consistent with the information provided by Plaintiff and Experian. Having "sufficient balances on her revolving lines of credit" meant that Plaintiff could have charged additional amounts on her existing credit accounts at any time causing her to max out her existing credit lines, which would be a concern for a lender.

The second principal reason that Plaintiff's credit was denied was "you have sufficient credit available considering your income." This, too, is a "specific reason for the action taken." While Plaintiff indicated in applying for credit that her "household" income was $70,000, Plaintiff personally had no income source; she was a student. Being able to charge additional amounts on her existing lines of credit and to max out on those credit lines without having any personal source of income is legitimate concern for any lender.

Plaintiff, however, finds MBNA's stated reasons to be "incoherent" and

"illogical." She argues that Regulation B requires that the stated reasons be "clearly and conspicuously" explained in "reasonably understandable" terms. There is, however, no such requirement in the statute or the regulations. In fact, the only mention of "clear and conspicuous" is in Section 202.4(d) of the regulation. Section 202.4 provides:

> (d) Form of disclosures--
>
> (1) General rule. A creditor that provides in writing any disclosures or information required by this regulation must provide the disclosures in a clear and conspicuous manner and, except for the disclosures required by §§ 202.5 [requests for information] and 202.13 [information for monitoring purposes], in a form the applicant may retain.

12 C.F.R. § 202.4(d).

As the Official Staff Interpretations make clear, however, the "clear and conspicuous" requirement set forth in this section deals, not with the *content* of the notice but rather with the *format*:

> **1. Clear and conspicuous**. This standard requires that disclosures be presented in a reasonably understandable format in a way that does not obscure the required information. No minimum type size is mandated, but the disclosures must be legible, whether typewritten, handwritten, or printed by computer.

12 C.F.R. § 202 Supp. I.

The only statutory/regulatory requirement is that the "format" must be "reasonably understandable." In this regard, the ECOA and Regulation B are substantially similar to the Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.*, and its Regulation M, 12 C.F.R. § 213.

Section 1667(a) provides, in pertinent part:

> Each lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and in a clear and conspicuous manner the following information with respect to that lease, as applicable. . . .

15 U.S.C. § 1667(a).

Regulation M provides:

> (a) General requirements. A lessor shall make the disclosures required by § 213.4, as applicable. The disclosures shall be made clearly and conspicuously in writing in a form the consumer may keep, in accordance with this section.

12 C.F.R. § 213.4(a).

Courts have held that the use of the phrase "clear and conspicuous", as used in the Consumer Leasing Act, pertains only to the degree of visibility of the required disclosure's language and not the degree of comprehension. *See Channell v. Citicorp National Services, Inc.*, 89 F.3d 379, 382 (7th Cir. 1996). *See also Schmidt v. Nissan Motor Acceptance Corp.*, 104 F. Supp. 955 (N.D. Ill. 2000). In stating the rule of the Seventh Circuit, the *Schmidt* court held, as follows:

> [T]he instant case is brought under the Consumer Leasing Act, which does not require that lease disclosures be comprehensible to the average consumer. As the court in *Channell* . . . explained, "clear and conspicuous manner" within the context of § 1667(a) of the Consumer Leasing Act refers to the mode of presentation, *not the degree of comprehension. So long as a disclosure is visible, it has satisfied the clear and conspicuous requirement of of § 1667 of the Consumer Leasing Act,* **even if it is incomprehensible to the average consumer**. Accordingly, plaintiffs' argument that allegations of confusion are enough to survive a Rule 12(b)(6) motion to dismiss fails.

12

104 F. Supp. 2d at 957 (citations omitted and emphasis added.)

Plaintiff, here does not complain about the format or "mode of presentation" of MBNA's adverse action notice, and as is evident by the notice itself [Plaintiff's Ex. A; Defendant's Ex. 1], it fully complies with Regulation B's notice requirements.

The cases cited by Plaintiff similarly do not support her contention that Regulation B requires that a creditor's stated reasons for adverse action be "clearly and conspicuously" explained to unsophisticated consumers. In fact, none of the cases relied upon by Plaintiff involve the ECOA or Regulation B. Rather, they involve the Truth-in-Lending Act ("TILA") and its particular regulation, "Regulation Z." Indeed, as the court observed in *Fort v. First Citizens Bank & Trust Co.*, 526 F. Supp. 22 (M.D.N.C. 1981) -- one of the cases Plaintiff here relies upon -- "the term 'conspicuous' does not apply to [different federal regulations] equally." *Id.* at 26. Courts, in fact, have specifically observed that TILA's requirements are "hyper-technical." *See e.g., Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) (stating that "hypertechnicality reigns" in TILA cases).

The other cases cited by Plaintiff similarly provide no support for her arguments. For example, Plaintiff cites *Knapp v. Americredit Financial Services, Inc.*, 245 F. Supp. 2d 841 (S.D.W.Va 2003), contending that that case stands for the proposition that whether a disclosure is conspicuous for purposes of the Truth in Lending Act is a question of fact, not appropriate for summary disposition. However, "conspicuousness"

was not what was at issue in *Knapp*. The "question of fact" the court found there was whether a "loan acquisition fee" was a "finance charge" subject to the TILA and its disclosure requirements.

*Herrera v. First Northern Sav. and Loan Ass'n*, 805 F.2d 896 (10th Cir. 1986), similarly does not support Plaintiff's contention. In that case the issue was the font and typestyle used by the creditor in making its TILA disclosures, not the content of the disclosures. The court found that the disclosure statement in which the term "annual percentage rate" was printed in capital letters and in boldface type, when over 30 other terms and phrases appearing on statement were also printed in capital letters, in identical size, style and boldness of type, was violative of truth-in-lending regulations requiring that annual percentage rate be printed more conspicuously than other required terms.

In sum, the Court finds that the allegations in Plaintiff's Complaint do not make out a cognizable claim for violation of the ECOA. MBNA's adverse action notice clearly and conspicuously presented the creditor's specific reasons for its denial of Plaintiff's credit card application.

## CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted. Therefore,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss **[Dkt. # 39]** be, and hereby is, GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Complaint be DISMISSED, with prejudice.

The Court's ruling on Defendant's Motion to Dismiss renders the parties' various discovery motions **[Dkt. Nos. 14, 19, 26, 32, 47, 51, and 56]** and Magistrate Judge Pepe's Report and Recommendation on these motions **[Dkt. # 65]** MOOT. The Court also DENIES as MOOT, Plaintiff's Motion for Class Certification **[Dkt. # 71]**.

Let Judgment be entered accordingly.

                                 s/Gerald E. Rosen
                                 Gerald E. Rosen
                                 United States District Judge

Dated: February 27, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 27, 2008, by electronic and/or ordinary mail.

                                 s/LaShawn R. Saulsberry
                                 Case Manager